IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

Tamika Seay,

               Plaintiff,

   vs.

Equifax Information Services, LLC, et al.,

               Defendants.

Case No.: 7:18-cv-00204-HL

**PLAINTIFF'S RESPONSE TO DEFENDANT WESTERN-SHAMROCK CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES the Plaintiff, TAMIKA SEAY, by and through her counsel, and responds to Defendant Western-Shamrock Corporation's ("Western") motion to dismiss as follows:

**INTRODUCTION**

This lawsuit arises from the continued reporting of scheduled monthly payment amounts for paid and closed accounts, despite Plaintiff's disputes of the respective trade lines.  In its motion to dismiss, Western primarily argues that Plaintiff does not allege that the balance is reporting inaccurately or any inaccuracies other than the scheduled monthly payment amount.  Plaintiff agrees that her sole dispute concerns Western's reporting of the scheduled monthly payment amount after the subject account was paid and closed.  The Credit Reporting Resource Guide,

1

which is the industry standard for credit reporting, required Western to report the scheduled monthly payment amount as zero after Plaintiff paid the account and Western closed it.  Accordingly, Plaintiff properly pled that Western violated the Fair Credit Reporting Act ("FCRA") by failing to correct the reporting of the scheduled monthly payment obligation by Plaintiff to $0 in response to her dispute.

Western also cites *Keith v. Equifax Info. Servs., LLC*, No. 18-cv-00121, 2019 WL 510446 (M.D. Ga. Feb. 8, 2019) in support of its motion.  However, *Keith* is distinguishable from the instant case as to its holding.  On the other hand, Judge Self recently considered similar arguments in *Jackson v. Equifax Info. Servs., LLC*, No. 18-cv-00271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019) and rejected those arguments in denying the defendant's motion to dismiss.  Similarly, Plaintiff requests this Court to reject Western's arguments and deny its motion to dismiss.

## STATEMENT OF FACTS

Western is inaccurately reporting its trade line for Plaintiff with a $42.00 scheduled monthly payment amount, though the account has been paid and closed. (Doc #1, ¶¶ 7-8, 10.)  Western's account with Plaintiff was paid and closed and has a zero balance.  (Doc #1, ¶ 10.)  Plaintiff no longer has an obligation to make monthly payments to Western.  (Doc #1, ¶ 10.)

On June 11, 2018, Plaintiff obtained her Equifax and Trans Union credit disclosures and noticed that Western's trade line for Plaintiff ("the Western trade

lines") was reporting inaccurately with a positive scheduled monthly payment amount. (Doc #1, ¶ 11.) On or about September 26, 2018, Plaintiff submitted letters to Equifax and Trans Union disputing the Western trade line. (Doc #1, ¶ 12.) In her dispute letters, Plaintiff explained that her account with Western was closed and asked Equifax and Trans Union to report the scheduled monthly payment amount in the Western trade line as $0. (Doc #1, ¶ 13.) Equifax and Trans Union forwarded Plaintiff's dispute to Western. (Doc #1, ¶ 14.) On October 4, 2018 and October 10, 2018, Plaintiff received Trans Union's and Equifax's investigation results, respectively, which showed that Trans Union, Equifax and Western failed or refused to report the scheduled monthly payment as $0 on the Western trade line. (Doc #1, ¶¶ 15, 16.)

Western failed to conduct a proper investigation of Plaintiff's dispute. (Doc #1, ¶¶ 19, 25.) Western also failed to review all relevant information available to it and provided by Equifax and Trans Union. (Doc #1, ¶¶ 20, 26.) Western's trade line is inaccurate and creates a misleading impression in Plaintiff's credit files with Equifax and Trans Union. (Doc #1, ¶ 21.)

As a direct and proximate cause of Defendants' failures to comply with the FCRA, Plaintiff has suffered credit and emotional damages. (Doc #1, ¶ 17.) Plaintiff has also experienced undue stress and anxiety due to Defendants' failures to correct the errors in her credit file or improve her financial situation by obtaining new or

more favorable credit terms as a result of the Defendants' violations of the FCRA. (Doc #1, ¶ 17.)   Moreover, Plaintiff has suffered mental anguish, suffering, humiliation and embarrassment as a result of Western's violations of the FCRA. (Doc #1, ¶¶ 22, 27.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   *Iqbal*, 556 U.S. 663.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.   *Id.*, at 664.

## LAW & ARGUMENT

1.   ***Jackson*, not *Keith*, most aptly applies to the instant case**

    a.   ***Keith***

Western begins by citing *Keith v. Equifax Info. Servs., LLC*, No. 18-cv-00121, 2019 WL 510446 (M.D. Ga. Feb. 8, 2019) and argues that this Court should dismiss

Plaintiff's complaint for the reasons stated in *Keith*.   However, *Keith* is distinguishable from the instant case for two major reasons.

First, in *Keith*, the court primarily found that the plaintiff failed "to adequately allege [the defendant] received proper written notice of the dispute about the accuracy of the credit report" because Plaintiff alleged that notice was provided "upon information and belief."  *Id*. at *3.  In the instant case, however, Plaintiff does not allege notice "upon information and belief."  Rather, Plaintiff alleges that "Equifax and Trans Union forwarded Plaintiff's consumer disputes to [Western]." (Doc #1, ¶ 14.)  Therefore, the basis for the holding in *Keith* does not exist in the instant case.

Second, Western argues that "Plaintiff makes a conclusory statement alleging that the CRAS forwarded the consumer disputes to the furnisher, but utterly fails to explain how Plaintiff knows that the disputes were forwarded" and cites *dicta* from *Keith* in support.   (Doc #18-1, pp. 6-7, citing *Keith*, 2019 WL 510446, at *3.) Western also argues that Plaintiff's "naked allegations do not establish how Shamrock failed to meet its duties under the FCRA."  (Doc #18-1, p. 7.)

Western seeks to hold Plaintiff to a higher pleading standard than required by *Twombly*, *Iqbal* and their progeny.  To satisfy her pleading requirements, Plaintiff merely must plead sufficient facts to state a plausible claim for relief, *Iqbal, supra*, which Plaintiff did.  Plaintiff does not need to plead facts with particularity, because

Plaintiff does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity. Fed. R. Civ. P. 9(b), (g). Therefore, Western's motion to dismiss should be denied.

Moreover, Western seeks this Court to impose an impossible pleading standard, as Plaintiff cannot know the communications between Western and the credit bureaus until Plaintiff engages in discovery. Likewise, Plaintiff cannot know Western's investigative procedures until Plaintiff engages in discovery. Requiring a consumer to know and plead specific facts regarding the communications between a consumer reporting agency and a furnisher or the details of a furnisher's investigative practices would prevent any consumer from filing any lawsuit under the FCRA, as virtually no consumer would or could know such facts before engaging in discovery. These matters are classic matters for discovery in FCRA cases. Plaintiff's allegations that Western failed: (1) to review all information available to it and provided by Equifax and Trans Union and (2) to conduct a proper investigation of Plaintiff's dispute, are sufficient for pleading purposes to put Western on notice of the claims against it. Therefore, Western's motion should be denied.

As to Western's reliance on *Keith*, the plaintiff in *Keith* did not file an opposition to the defendant's motion to dismiss, so the Court did not consider any arguments in opposition to the motion (including the foregoing arguments).

6

   b.   *Jackson*

Contrary to Western's reliance on *Keith*, Judge Self recently dismissed similar arguments made in a defendant's motion to dismiss in *Jackson v. Equifax Info. Servs., LLC*, No. 18-cv-00271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019).   In *Jackson*, the allegations by the plaintiff are nearly identical to those of the instant case, except the accounts at issue in *Jackson* were charged off rather than paid in full.  *Id.* at *1-2.  Ultimately, Judge Self held that "the Court finds that Plaintiff has alleged sufficient facts to raise a plausible claim that the Trans Union credit disclosure was materially misleading."  *Id.* at *4.  "Specifically, the Court finds that it is plausible that the monthly payment trade line could materially mislead a prospective lender about the nature of Plaintiff's obligation to make payments on this account . . . ."  *Id.*

Here, as in *Jackson*, Plaintiff alleged that Western's reporting of the positive scheduled monthly payment amount "is inaccurate and creates misleading impression" in Plaintiff's credit files.  (Doc #1, ¶ 21.)  In addition, regardless of whether a lender would be misled, Plaintiff alleges that the reporting of the positive scheduled monthly payment amount affects her ability to obtain credit, because of the effect on her credit score.  (Doc #1, ¶ 17.)  Therefore, Plaintiff has properly pled the inaccuracy in the Western trade line and Western's motion should be denied. Accordingly, Western's motion to dismiss should be denied.

**2.** **Plaintiff sufficiently pled that Western inaccurately reported a scheduled monthly payment amount**

Next, Western argues that "Plaintiff has not established that the challenged reporting was inaccurate or misleading" and that "she does not allege that the loan balance is incorrect." (Doc #18-1, p. 7.)

Plaintiff agrees with Western that she does not challenge the reporting of the balance. Rather, Plaintiff alleges that the account was closed with a $0 balance and that she no longer has a scheduled monthly payment obligation to Western. Plaintiff clearly pled the inaccuracy in Western's reporting: Western is reporting a $42.00 scheduled monthly payment obligation by Plaintiff although the balance is $0 and the account is closed. (Doc #1, ¶¶ 7-8, 10.)

Moreover, and more to the point, the Credit Reporting Resource Guide ("CRRG"), which is the industry standard for credit reporting and which is certainly available to Western, required the Western trade line to be reported with a scheduled monthly payment amounts of $0 because the account was paid and closed. (Doc #19-1.)

Plaintiff informed Western (via Equifax and Trans Union) that the account was closed and that she no longer had an obligation to make monthly payments. (Doc #1, ¶¶ 13, 14.) Of course, Western already knew that before it received Plaintiff's dispute, because Western had been reporting the account as paid and closed. (Doc #1, ¶ 11.) Therefore, upon receiving Plaintiff's dispute, Western

merely needed to review Plaintiff's dispute letter, review its records to determine that Plaintiff's dispute letter was accurate, review the credit reporting standards (Doc #19-1), and then correct its reporting of the scheduled monthly payment amount to $0.

Western's reporting of the balance as zero does not contradict Plaintiff's claims, but, to the contrary, shows that its reporting of the scheduled monthly payment amount as $42.00 is inaccurate. Therefore, Western's motion to dismiss should be denied.

### 3. <u>Western was not required to resolve a legal question to properly respond to Plaintiff's dispute</u>

Western also argues that "the inclusion of a scheduled monthly payment amount . . . is not a factual question, but a legal question" that Western is not required to resolve. (Doc #18-1, p. 8.) However, the scheduled monthly payment amount is clearly a factual question and did not require Western to resolve any legal issues. The account was paid and closed and Western was already reporting the balance as $0 when Plaintiff disputed the reporting of the scheduled monthly payment amount. (Doc #1, ¶ 11.) Western did not need to resolve any legal question to report the scheduled monthly payment amount as $0 as well.

### 4. <u>Western's citation to *Gagnon* is inapposite</u>

Finally, Western cites *Gagnon v. JP Morgan Chase Bank, N.A.*, 563 B.R. 835 (2017) in support of its motion. (Doc #18-1, p. 8.) However, *Gagnon* did not

concern the credit reporting of a positive scheduled monthly payment amount for a paid and closed account.  Furthermore, the excerpt cited by Western concerned the plaintiff's claims against the consumer reporting agency under 15 U.S.C. § 1681e(b) (which are different from Plaintiff's claims against Western under 15 U.S.C. § 1681s-2(b)) and discussed the reporting of a $0 account balance and a discharged debt.  *Id.* at 849-50.  Therefore, *Gagnon* has no application to the instant case.

Western cites to *Gagnon* in support of its argument that "no one would be misled into thinking any sums were due as the loan balance was zero." (Doc #18-1, p. 6.)  However, Western's argument is unavailing.  First, Plaintiff alleges that Western's continued reporting of the positive scheduled monthly payment amount not only violated the FCRA, but negatively affected her credit score and caused damage to Plaintiff.  (Doc #1, ¶¶ 17.)  Regardless of whether a lender would be misled by reading the positive scheduled monthly payment amount, Plaintiff is nonetheless harmed by the reporting of the positive scheduled monthly payment amount.  Second, Western's argument about the effect of its credit reporting on a potential lender does not address Western's violation of the FCRA, but only Plaintiff's damages.  As discussed above, Plaintiff sufficiently pled her damages. (Doc #1, ¶¶ 17, 22, 27.)  Therefore, Western's argument lacks merit.

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Court to deny Western's motion to dismiss in its entirety.

DATED: March 11, 2019

Respectfully submitted,

By: */s/ Jacqueline Piland*
Jacqueline Piland
Georgia Bar No. 782252
6321 Marcelina Ct.
Braselton, GA 30517
Telephone: (770) 863-8344
Facsimile: (770) 863-8325
E-Mail: jackie@pilandlawgroup.com
Attorneys for Plaintiff

### Proof of Service

I, Jacqueline Piland, hereby state that on March 11, 2019, I served a copy of the foregoing document upon all parties and counsel as their addresses appear of record via the Court's CM/ECF system.

/s/ Jacqueline Piland

### LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: March 11, 2019