**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**TAMIKA SEAY**,

    Plaintiff,

v.

**TRANS UNION, LLC and WESTERN-SHAMROCK CORPORATION**,

    Defendants.

Civil Action No. 7:18-CV-204 (HL)

**ORDER**

Plaintiff Tamika Seay, a consumer, filed this lawsuit seeking redress of alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. Now before the Court are Defendants Trans Union, LLC ("Trans Union") and Western-Shamrock Corporation's ("Shamrock") Motions to Dismiss (Docs. 16, 18), which the Court converted to motions for summary judgment (Doc. 31). After reviewing the pleadings, briefs, and other evidentiary materials presented, the Court concludes that there is no genuine dispute of the material facts and finds that Defendants are entitled to judgment as a matter of law.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that Shamrock is inaccurately reporting a tradeline ("Errant Tradeline") on her Trans Union credit disclosure. (Doc. 1, ¶ 7).[1] According to

---

[1] In her Complaint, Plaintiff also names as Defendants Equifax Information Services, LLC ("Equifax") and Warehouse Home Furnishings Distributors, Inc.

Plaintiff, her Trans Union credit report erroneously reflects a scheduled monthly payment to Shamrock of $42.00, even though the account was paid and closed with no continuing obligation to make monthly payments. (Id. at ¶¶ 8, 10).

Plaintiff contends that she first learned of the Errant Tradeline on June 11, 2018, when she received a copy of her credit disclosures from Trans Union. (Id. at ¶ 11). Plaintiff disputed the Errant Tradeline to Trans Union by letter dated September 26, 2018. (Id. at ¶ 12). In her letter, Plaintiff noted that the account in dispute was closed and requested that Trans Union revise her credit report to reflect a $0.00 monthly payment. (Id. at ¶ 13). Plaintiff alleges that Trans Union forwarded her consumer dispute to Shamrock. (Id. at ¶ 14). On October 4, 2018, Plaintiff received the results of Trans Union's investigation, which she contends showed that Trans Union and Shamrock refused to conduct a proper investigation of Plaintiff's dispute and to report the scheduled monthly payment as $0.00 on the Errant Tradeline. (Id. at ¶¶ 15, 19-20, 25-26, 59, 66).

As a result of Defendants' alleged negligent and/or willful failure to comply with the FCRA's requirements regarding the investigation of disputed accounts, Plaintiff claims that she has suffered both emotional damage and damage to her credit. (Id. at ¶ 17). She further states that she has experienced undue stress and anxiety and that she has been unable to improve her financial situation or to

---

f/k/a Farmers Furniture Company ("Warehouse Home Furnishings"). Plaintiff resolved her dispute with Equifax (Doc. 29) and voluntarily dismissed her claims against Warehouse Home Furnishings without prejudice (Doc. 24).

obtain more favorable credit terms because of Defendants' failure to correct the errors in her credit file. (Id.).

Plaintiff filed her Complaint on December 19, 2018. In lieu of filing an answer, Trans Union filed a Motion to Dismiss. (Doc. 16). Attached to Trans Union's Motion was the Declaration of Don Wagner, a Trans Union employee, who attested to how the Shamrock tradeline was reporting at the time Plaintiff's claim arose. (Doc. 16-3). Shamrock also relied on the contents of this Declaration, in part, in support of its Motion to Dismiss. (Doc. 18). After reviewing the motions and the Wagner Declaration, the Court found it appropriate to convert the pending motions to dismiss to motions for summary judgment. (Doc. 31). The Court allowed 14 days for the parties to submit any additional pertinent information. (Id. at p. 3). Defendants jointly submitted supplemental authority in support of their motions. (Doc. 32). Plaintiff provided no further information.

## II.  SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

Plaintiff seeks damages for injuries she purportedly sustained as a result of Trans Union and Shamrock's alleged failure to investigate and to correct inaccuracies in her credit report in violation of the FCRA. More specifically,

4

Plaintiff contends that despite being informed that her credit report should reflect a $0.00 monthly payment, Defendants continue to report a positive scheduled monthly payment for an account that has been paid off and closed. In order to recover under the FCRA, Plaintiff first must demonstrate that there was an inaccuracy in her credit report. Because Plaintiff cannot satisfy this essential component, her claims against each Defendant fail as a matter of law.

### A. Trans Union, LLC

Trans Union moves the Court to dismiss Plaintiff's claims because Plaintiff has failed to establish that her Shamrock account was reporting inaccurately on her credit report. Trans Union argues that in the absence of an inaccuracy, Plaintiff cannot recover under the FCRA.

Congress enacted the FCRA to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). To achieve this goal, the Act "imposes a host of requirements concerning the creation and use of consumer reports and makes any consumer reporting agency that willfully fails to comply with one of these requirements with respect to a consumer liable to that consumer for actual, statutory, or punitive damages." Pedro v. Equifax, Inc., 868

F.3d 1275, 1280 (11th Cir. 2017) (internal citation and quotation marks omitted); 15 U.S.C. § 1681n(a).

Plaintiff here alleges that Trans Union negligently and willfully violated § 1681e(b) of the FCRA by failing to follow reasonable procedures to ensure the accuracy of the information contained in her credit history. (Doc. 1, ¶¶ 58, 65). Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a claim for a violation of § 1681e(b), the plaintiff must establish that "(1) a credit reporting agency's report was inaccurate and (2) that the inaccurate report was a causal factor in the denial of his credit application." Ray v. Equifax Info. Servs., LLC, 327 F. App'x 819, 826 (11th Cir. 2009).

Plaintiff also contends that Trans Union negligently and willfully violated the requirements of § 1681i because the credit reporting agency did not conduct a reasonable investigation into the accuracy of the information appearing in her credit report. (Doc. 1, ¶¶ 59, 66). Under § 1681i, when a consumer disputes the accuracy of any information contained in her consumer file, the consumer reporting agency then "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15

U.S.C. § 1681i(a)(1)(A). To state a claim for a violation of § 1681i, a plaintiff must allege that "(1) the consumer's credit report contains inaccurate or incomplete information; (2) the consumer notified the credit reporting agency of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the agency failed to respond or conduct a reasonable reinvestigation of the disputed items; (5) the failure to reinvestigate caused the consumer to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." Bermudez v. Equifax Info. Servs., LLC, No. 6:07-CV-1492-Orl-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008); Lazarre v. JPMorgan Chase Bank, N.A., 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011).

Implicit under both § 1681e(b) and § 1681i is the requirement that the consumer first provide evidence of an inaccuracy in his credit report. See Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991); see also Alexander v. Certegy Check Servs., Inc., 8:16-CV-859-17JSS, 2016 WL 5843176 (M.D. Fla. Oct. 4, 2016) ("To establish a violation of either provision, a plaintiff must make a threshold showing that the credit reporting agency reported or maintained inaccurate information."). "[T]he actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made." Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 699 (N.D. Ga. 2012) (quoting Washington v. CSC Credit Servs., 199 F.3d 267 (5th Cir. 2000)). Accordingly, if

7

the consumer "fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of [the Act], and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency." Cahlin, 936 F.2d at 1156.

Courts have adopted two approaches to determine what constitutes an "accurate" credit report. Pedro, 868 F.3d at 1281. Some courts apply the "technically accurate" approach, which "requires only that credit reporting agencies report information that is . . . not false." Id.; see also Cahlin, 936 F.2d at 1157 ("[A] credit reporting agency satisfies its duty under [the Act] if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect."). Other courts require "maximum possible accuracy," holding that a credit reporting agency must report information that is both accurate and not misleading or incomplete. Id. The Eleventh Circuit has not explicitly adopted either approach. Id. ("Although the better reading of the Act requires that credit reports be both accurate and not misleading, we cannot say that reading the Act to require only technical accuracy was objectively unreasonable.").

Regardless of the approach applied in this case, there is no inaccuracy in the reporting of the Shamrock account on Plaintiff's Trans Union credit report. Trans Union reported the Shamrock trade line as follows:

8

```
WESTERN FINANCE #████        ( 801 S ABE ST, STE 2A, SAN ANGELO, TX 76903-6771, (325) 653-6814 )
Date Opened:    08/22/2013        Balance:            $0           Pay Status:  Current; Paid or Paying as Agreed
Responsibility: Individual Account Date Updated:     12/31/2013    Terms:       $42 per month, paid Monthly for 4
Account Type:   Installment Account Payment Received: $42                       months
Loan Type:      NOTE LOAN         Last Payment Made: 01/07/2014    Date Closed: 12/31/2013
                                  High Balance:      $167          >Maximum Delinquency of 60 days in 11/2013<
Remarks: CLOSED
         | 11/2013 | 10/2013 | 09/2013 |
Rating   |   60    |   30    |   OK    |
```

(Doc. 16-3, p. 2).[2]

Plaintiff alleges that Shamrock is reporting an erroneous scheduled monthly payment of $42.00 on her Trans Union credit report. (Doc. 1, ¶ 8). According to Plaintiff, the account has been paid off and closed, there is a zero balance, and she is no longer obliged to make monthly payments to Shamrock. (Id. at ¶ 10). Trans Union does not disagree with Plaintiff's contention that the Shamrock account is closed and has a zero balance. However, Trans Union points out that the report does not reflect that Plaintiff owes a monthly payment. Rather, the report accurately sets forth the historical payment terms while simultaneous reflecting that the account has been paid in full and closed.

Trans Union argues, and Plaintiff does not dispute, that the reporting of historical information does not violate the FCRA. According to Trans Union, the reference to the terms of payment in Plaintiff's credit report is nothing more than

---

[2] Plaintiff objected to the Court's consideration of the Wagner Declaration in the context of the motions to dismiss, arguing that the excerpt of her credit history included in the Declaration was not dated. (Doc. 19, p. 5). Plaintiff did not otherwise contest the accuracy of the information reported. After the Court converted the motions to dismiss to motions for summary judgment, despite being afforded the opportunity to do so, Plaintiff submitted no evidence suggesting that the information contained in the Declaration is inaccurate. The evidence therefore is unrebutted.

a reflection of the terms of repayment agreed upon by Plaintiff and Shamrock. Reporting this term does not otherwise change the accuracy of the report or cause any confusion about the status of the account. In Cahlin, the Eleventh Circuit explained that while a credit reporting agency must undertake reasonable efforts to report accurate information, "it has no duty to report only that information which is favorable or beneficial to the consumer." 936 F.2d at 1158. That is because the purpose of the FCRA is not only to ensure "fair and equitable" procedures for the consumer but also to meet the "needs of commerce" by requiring accurate credit reporting. Id. If credit reporting agencies "shaded every credit history in their files in the best possible light for the consumer," the economic purpose of credit reporting would be vitiated. Id. Therefore, in order to strike the appropriate balance, the standard of accuracy must be "an objective measure that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting." Id. Applying this objective standard, Trans Union's position is that including the terms of payment on Plaintiff's credit report does nothing more than inform future creditors of her ability and willingness to satisfy her account.

Plaintiff argues that the reference to the payment terms on her Trans Union credit report is not a historical term but an inaccurate reporting of a positive scheduled monthly payment. And, because the report otherwise reflects

that the account is closed with a zero balance, the conflicting term is misleading and harmful to her ability to obtain future credit. In support of her position, Plaintiff relies in a recent decision from this district, Jackson v. Equifax Info. Servs., LLC, No. 5:18-CV-00271-TES, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019). In Jackson, as here, the plaintiff alleged that the credit reporting agency incorrectly showed monthly payments for two different accounts even though those accounts had been charged off and closed. Jackson, 2019 WL 179570, at *1. Because the accounts had been charged off, the plaintiff contended that her credit report should also list a scheduled monthly payment of $0.00. Id. at *2. However, unlike this case, the plaintiff's credit report in Jackson also listed an active balance despite being charged off. In denying the defendant's motion to dismiss, the court there concluded that "it is plausible that the monthly payment trade line could materially mislead a prospective lender about the nature of Plaintiff's obligation to make payments on this account particularly when the account continues to list a balance despite being charged off." Id. at *4 (adopting the approach taken in Freedom v. Citifinancial, LLC, No. 15 C 10135, 2016 WL 4060510, at *6 (N.D. Ill. July 25, 2016) (finding that the plaintiff adequately alleged a plausible claim that the credit reporting agency failed to correct information on the plaintiff's credit report where "reporting a 'scheduled payment' could create the mistaken impression that Plaintiff still owed on the account, which was not accurate because his debt had been discharged in bankruptcy")).

11

The court's decision in Jackson turned not on the accuracy of the information being reported but on whether the combined reporting of a scheduled monthly payment and a positive balance on an account that had otherwise been charged off could materially mislead a prospective creditor. The facts presented in this case are distinguishable. Here, the question before the Court is whether listing the payment terms is accurate where the credit report also provides that there is a $0 balance and the account is closed.

This case is more closely aligned with another case in this district, Gibson v. Equifax Info. Servs., LLC, No. 5:18-CV-465-TES (M.D. Ga. July 2, 2019). In Gibson, as here, the disputed tradelines included information regarding payment terms but also clearly denoted that the accounts were closed and that the balances were all $0.00. Gibson, 5:18-CV-465-TES, at 9-10. Viewing the accounts as a whole, the court in granting the defendant's motion to dismiss concluded that "it is undeniable that there exists no ongoing obligation for payment." Id. (quoting Meeks v. Equifax Info. Servs., No. 1:18-Cv-03666-TWT-WEJ, 2019 WL 1856411, at *1 (N.D. Ga. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1856412, at *1 (N.D. Ga. Apr. 23, 2019)).

In this case, as in Gibson, Plaintiff's Trans Union credit report very plainly shows that the Shamrock account is closed with a $0.00 and that there is no future obligation to make any payment. There is no inaccuracy or misleading information in the reporting, and Plaintiff has not demonstrated otherwise. In the

absence of an inaccuracy, Plaintiff's claims against Trans Union under both § 1681e(b) and § 1681i must fail. Consequently, Trans Union is entitled to summary judgment.

### B. Western-Shamrock Corporation

Plaintiff's claims against Shamrock also fail as a matter of law because Plaintiff has not demonstrated an inaccuracy in the information Shamrock reported to Trans Union. In Counts One and Two of her Complaint, Plaintiff alleges that Shamrock negligently and willfully violated 15 U.S.C. § 1681s-2(b) when it failed to conduct a proper investigation of Plaintiff's dispute. (Doc. 1, ¶¶ 18-28). Under § 1681s-2(b), entities that furnish information to credit reporting agencies, known as "furnishers," must ensure the accuracy of their reporting. Upon receiving notice of a dispute, the furnisher has an affirmative duty to conduct an investigation with respect to the disputed information, to determine whether the information provided to the credit reporting agency is either incomplete or inaccurate, and to report the results of the investigation to the credit reporting agency. 15 U.S.C. § 1681s-2(b)(1)((A)-(C)). "Section 1681s-2(b) thus contemplates three potential ending points to reinvestigation: verification of accuracy, a determination of the inaccuracy or incompleteness, or a determination that the information 'cannot be verified.'" Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312 (11th Cir. 2018) (quoting Hinkle v. Midland

Credit Mgmt., Inc., 827 F.3d 1295, 1301-02 (11th Cir. 2016) (quoting 15 U.S.C. § 1681s-2(b)(1)(E)).

The Eleventh Circuit explained in Felts that,

> [r]egardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

Id. at 1313 (emphasis in original).

Plaintiff alleges that, despite being informed of a dispute concerning a scheduled monthly payment, Shamrock failed to conduct a reasonable investigation and to direct Trans Union to amend the Errant Tradeline to reflect a $0.00 balance. (Doc. 1, ¶¶ 19-20, 25-26). But Plaintiff has not, and cannot, show that there was an inaccuracy in the reporting of the Shamrock tradeline. "[W]ithout identifying some fact in the record establishing that the information [Shamrock] reported regarding her account was inaccurate or incomplete," Plaintiff cannot prevail on her claim pursuant to § 1681s-2(b) of the FCRA. Felts, 893 F.3d at 1313. Shamrock is, therefore, entitled to judgment as a matter of law.

14

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants Trans Union and Shamrock's Motions for Summary Judgment (Docs. 16, 18). This case is hereby dismissed with prejudice.

**SO ORDERED** this 30th day of September, 2019.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**